**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ANTHONY SANSONE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 13 C 3415 |
| | ) | Judge Milton Shadur |
| v. | ) | |
| | ) | |
| MEGAN BRENNAN, Postmaster General, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S MOTIONS *IN LIMINE*

1.   Motion to preclude testimony or argument about superseded prayer for relief.

Plaintiff moves *in limine* that defendant be barred from stating that plaintiff, in his

original complaint, sought reinstatement as part of his prayer for relief, that defendant be barred

from asking plaintiff questions about that aspect of the prayer for relief in his original complaint,

and that defendant's opinion witness, Dr. Diana Goldstein, be barred from testifying about that

aspect of plaintiff's original prayer for relief.  Testimony about this superseded pleading is likely

to confuse the issues and the jury.

Mr. Sansone's initial complaint (docket #1, filed 5/7/2013), drafted by his attorneys,

contained a boiler-plate prayer for relief that included a request for reinstatement.  That was an

error by Mr. Sansone's lawyers – Mr. Sansone suffered from severe depression and anxiety after

his termination that made him feel it was impossible to consider returning to work.  As Mr.

Sansone testified in his deposition, when the complaint was filed in May, 2013 he did not want

to be reinstated.  (Sansone dep. p. 29, l. 15 – p. 31, l. 25.)  (Relevant deposition excerpts and

exhibits referred to in these motions are attached.)  When he filed an amended complaint in June,

2014 (docket #25) and a second amended complaint in March, 2015 (docket #52), the error of counsel was corrected and reinstatement was not requested.

Contemporary documentary evidence also is clear that Mr. Sansone did not feel he could return to work at the Postal Service and did not want to be reinstated. On October 28, 2011, after six weeks of pleas to the Postal Service to accommodate Mr. Sansone, by Mr. Sansone and his supervisor, Mr. von Rhein, Mr. Sansone sent an e-mail to Mr. von Rhein saying he was surrendering. He wrote, "I'm asking you to call Mr. Greiser and tell him to stop pursuing this matter. I called shared services and requested a disability package. I feel my drive has been shattered and don't see how I could even go back to such an environment." (Pl.'s Exh. 39.) Indeed, exhibits offered by defendant show that at the end of November, 2011, Mr. Sansone made it clear to the Postal Service that he did not want to return to work. (Def.'s Exh. 30.)

Defendant, however, wants to bring Mr. Sansone's earlier superseded prayer for relief to the attention of the jury. Defendant's expert has indicated that she wants to rely on the request for reinstatement to support her assertion that Mr. Sansone was not badly depressed as a result of his termination, or at least was not so badly depressed that he considered himself incapable of working. This would elevate an error of counsel to a matter of substantive evidence, misleading and confusing the jury.

The Court has the authority to preclude testimony or argument about superseded pleadings pursuant to Fed.R.Ev. 403. Rule 403 says:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Case law is clear that evidence of superseded pleadings properly may be excluded pursuant to Rule 403. In *DePaepe v. General Motors Corp.*, the trial judge excluded evidence of plaintiff's

changing theories of liability in an auto accident case – first he blamed the car's brakes, then the windshield, then the sun visor – on Rule 403 grounds. The Seventh Circuit affirmed the decision: "A court is entitled to keep the jury focused on the claim of liability that requires decision; the judge need not allow the defendant to put the plaintiff's litigation tactics on trial. Inconsistent pleadings are allowable, and the use of discovery to winnow or refine theories of liability should not be discouraged." 141 F.3d 715, 719 (7th Cir. 1998).

In this case, there is plenty of contemporaneous evidence of Mr. Sansone's mental state and his feelings about whether he could return to work in records of his doctors and psychiatrist, in e-mails he sent, and in the disability retirement claim he filed. Evidence about the prayer for relief in his original complaint is not needed. Indeed, defendant itself intends to argue that Mr. Sansone was no longer capable of working after the beginning of January, 2012, when he filed for a disability retirement: defendant's fourth statement of contested issues of fact or law is "Whether plaintiff was no longer a `qualified individual with a disability' upon his decision to pursue a disability retirement, or at any time thereafter, such that his request for back wages and benefits is barred or limited and his request for future wages and benefits is barred?" It does not make sense for defendant to simultaneously argue that Mr. Sansone was unfit for work as of January, 2012 but was fit for work based on the prayer for relief in his complaint filed in May, 2013. The simple fact is, the prayer for reinstatement in Mr. Sansone's initial complaint was an inadvertent mistake. It should not be the subject of testimony or argument, because it would only confuse the issues and mislead the jury. Getting to the truth of what happened in Mr. Sansone's case should not be hindered by an inadvertent pleading mistake by Mr. Sansone's counsel.

2. <u>Motion to preclude testimony or argument that Mr. Sansone has received disability retirement benefits.</u>

The jury in this case should not hear evidence or argument about Mr. Sansone's receipt of disability retirement benefits. Plaintiff moves *in limine* to bar all testimony, other evidence, or arguments about receipt of those benefits.

Evidence about income Mr. Sansone has or has not received is not an issue for the jury. The parties are agreed that all issues related to Mr. Sansone's loss of pay are equitable issues to be decided solely by the Court if the jury returns a liability verdict in favor of the plaintiff. Where Mr. Sansone will not be allowed to put in evidence about the wages he has lost because of his termination from the Postal Service, it would be unfair to allow defendant to put in evidence or argue that he has received disability retirement payments because of his termination, giving the jury the false impression that he has gained monetarily as a result of his termination. In fact, plaintiff's economist expert, Dr. Charles Linke, is prepared to show that Mr. Sansone has lost and will lose over a million dollars in income because of his termination. If defendant were allowed to introduce evidence that Mr. Sansone received payments from his disability retirement, Mr. Sansone would have to be allowed to show the extent of this financial loss to give the jury a true impression of the monetary consequences of his termination.

Furthermore, the amount of Mr. Sansone's disability retirement benefits are not relevant in any proceedings with respect to his damages, because they are payment from a collateral source. Mr. Sansone's disability retirement payments were funded in part by payroll deductions from his salary. As such, the amount of his disability retirement payments are not to be deducted in calculating his lost pay. *See, e.g., E.E.O.C. v. Grady*, 857 F.2d 383, 389-90 (7th Cir. 1988) (pension

payments were a collateral source), and *Arneson v. Callahan*, 128 F.3d 1243, 1248 (8th Cir. 1997) (disability benefits were a collateral source.)

It is well-established in the case law that evidence of payments from a collateral source should not be put before the jury.

> Evidence of a plaintiff's receipt of insurance benefits carries with it the risk that a jury, in contravention of the collateral benefits rule, will reduce the plaintiff's pecuniary damages by the amount of insurance payments that he has received. As the Supreme Court recognized in an action that arose under the Federal Employers' Liability Act, 45 U.S.C. 51 et seq. ("FELA"), evidence concerning a plaintiff's "receipt of collateral social insurance benefits involves a substantial risk of prejudicial impact," so that "the likelihood of misuse by the jury clearly outweighs the value of this evidence." *Eichel v. New York Central Railroad Co.*, 375 U.S. 253, 255, 84 S.Ct. 316, 317, 11 L.Ed.2d 307 (1963).

*In re Air Crash Disaster Near Chicago, Ill., On May 25, 1979*, 803 F.3d 304, 309 (7th Cir. 1986).

In this case, the jury will be determining the amount of compensatory damages for emotional distress to be awarded to Mr. Sansone if it finds in his favor on the liability question. Evidence about his disability retirement payments would be prejudicial, inviting the jury to reduce his damages improperly because of collateral source payments. The probative value of this evidence is substantially outweighed by the danger of unfair prejudice.

3. <u>Motion to preclude testimony about conversations and e-mails with Postal Service attorney Isabelle Ferrera.</u>

Plaintiff moves *in limine* to bar testimony or documents (defendant's exhibits 29-31) about discussions between Mr. Sansone and Postal Service attorney Isabelle Ferrera. Those discussions were settlement talks to see if Mr. Sansone's EEO complaint could be settled and are excludable pursuant to Fed.R.Ev. 408.

On December 30, 2011, the Postal Service received from Tony Sansone his EEO Complaint of Discrimination. (Sansone dep. exh. 41. See Sansone dep. p. 180-181.) Postal Service attorney Isabelle Ferrera then engaged with discussions with Mr. Sansone to see if his

claim could be settled. She said as much in her e-mail to him on December 5, 2011: "As we discussed previously, my role in connection with this matter was to explore with you a possible resolution of the discrimination claim you raised in the EEO Pre-complaint Counseling process." (Exh. 31-A.) These were settlement discussions, aimed at seeing if there was a possibility of a resolution that would lead Mr. Sansone to withdraw his EEO charge.

The Postal Service seeks to offer Ms. Ferrera's testimony about her discussions with Mr. Sansone, and e-mails between them (Def.'s Exhs. 29-31) to show that Mr. Sansone was not interested in pursuing settlement talks with the Postal Service. But those discussions are barred by F.R.Ev. 408, which states:

> Evidence of the following is not admissible – on behalf of any party – either to prove or disprove the validity ... of a disputed claim or to impeach by a prior inconsistent statement or contradiction:

> \* \* \*

> (2) conduct or a statement made during compromise negotiations about the claim....

The discussions and e-mails that defendant seeks to introduce are directly covered by Rule 408. They were discussions engaged in by Ms. Ferrera with Mr. Sansone in an attempt by Ms. Ferrera to convince him to settle and resolve his EEO claim. Neither plaintiffs nor defendants should be permitted to offensively use statements made in an attempt to settle a claim as proof of the other party's unreasonableness in refusing to settle. The is precisely what defendant intends to do here.

It is particularly important that this testimony and these e-mails not be allowed into evidence, because they constitute a carefully-crafted record created by an attorney. The manufacture of evidence through use of a sophisticated employment attorney after litigation is already anticipated should not be allowed, particularly when that attorney elicits negative

6

statements from an unsophisticated lay-person, all under the guise of acting in their mutual interest to settle a claim. Rule 408 was intended to allow parties to engage, or not engage, in discussions about resolving a claim without fear that their words or actions could later be used against them.

    4.  <u>Motion to redact passages from Isabelle Ferrera's December 2, 2011 e-mail.</u>

If testimony by Isabelle Ferrera and her e-mails are not excluded entirely, at least self-serving statements, without foundation, in her e-mail of December 2, 2011 should be redacted. A copy of that e-mail (Def.'s Exh. 30) is attached. In it Ms. Ferrera made two statements that should not go to the jury.

First, Ms. Ferrera writes, "I understand that you have been made aware of Ms. Branch's willingness to continue discussing possible parking arrangements." Ms. Ferrera's "understanding" is not supported by the record. On September 14, 2011, when Mr. Sansone was told he could no longer park by Dock Door 33, he was told in an e-mail that Ms. Branch was available to meet. But after that all discussions were conducted with and through Mr. Sansone's supervisor, Chuck von Rhein; his boss, LaShawn Jacobs; and the head of the Reasonable Accommodations Committee, Stephen Grieser. Ms. Branch never indicated any willingness to "continue" discussing possible parking arrangements with Mr. Sansone. She could not "continue" to have discussions with Mr. Sansone, as she never had any discussions with him in the first place – she just sent down through the chain of command her directive that he had to park elsewhere. Ms. Ferrera's understanding that Mr. Sansone had "been made aware" of something that had not in fact been communicated to him has no foundation in the evidence.

Second, the jury should not be exposed to Ms. Ferrera's self-serving statement that, "As you know, Ms. Branch feels your previous parking spot posed a safety hazard." This suggests

that Mr. Sansone was informed that Ms. Branch felt his parking spot posed a threat to Mr.

Sansone's safety. But Mr. Sansone had been told nothing of the kind. Rather, he was told that

Ms. Branch was concerned that he might file a claim for property damage to his vehicle if he

continued to park at that location. As stipulated by the parties (see Stipulation Regarding Phone

Mail Messages, in the Pretrial Order) on the day Mr. Sansone was told to move, he was

forwarded a message sent from LaShawn Jacobs to Chuck von Rhein, giving Ms. Branch's

rationale:

> Hey, Chuck, I just been approached by Ms. Branch about Mr. Sansone. Supposedly he
> parks by dock door 30. She said he does not have permission from her to park there and
> the first time a trailer hits his vehicle he'll either want something, be complaining, want
> to do a claim, so he can no longer park there effective today. Thank you. Bye.

That is not a safety concern, as most people would understand the term – it is a concern that Mr.

Sansone might cost the Postal Service money by filing a damages claim -- and there is no point

anywhere in the contemporaneous record that Ms. Branch ever expressed any concern about Mr.

Sansone's safety. Ms. Ferrera's statement, about what Mr. Sansone supposedly knows, which he

did not in fact know, is unsupported by the evidence and should not be put before the jury.

     5.   <u>Motion to exclude introduction of or reference to Defendant's Exhibit 32.</u>

     Plaintiff moves *in limine* to bar defendant from introducing or referring to defendant's

Exhibit 32, an e-mail from Mr. Sansone's in which he says he "filed a[n] EEO complaint against

this new racist black manager." Introducing a racial issue into the case will confuse the issues

and the jury. The prejudicial effect of introducing this docment or allowing testimony or

argument about it outweighs its probative value.

     On December 29, 2011, Mr. Sansone wrote an e-mail to a medical provider (defendant's

Exhibit 32, attached), asking for help providing medical records that he thought he needed to

pursue his EEO claim. He wrote, "I filed a[n] EEO complaint against this new black racist

manager which is why I need this paper work filled out...." This e-mail offers very little, if anything, of probative value to the case – it is hard to see how it satisfies the relevance requirements of Fed.R.Ev. 410 -- but with its injection of an accusation of racism by a black manager against a white man, it raises substantial risks of unfair prejudice, confusing the issues, and misleading the jury. It should be excluded pursuant to Fed.R.Ev. 403. Claims of racial prejudice are inflammatory. Introduction of this e-mail would create a substantial risk of unfair prejudice, because jurors may be offended by and prejudiced against Mr. Sansone for making a claim of racism against Ms. Branch – they might think Mr. Sansone is himself a racist. And the introduction of this e-mail would raise a substantial risk of jury confusion, because it would lead the jury to think this case might have something to do with a claim of race discrimination. This case is about an alleged lack of reasonable accommodation. The jury should not be misled to think it is about something else.

Indeed, it seems likely that defendant wants to introduce this e-mail primarily in the hope that it will prejudice jury members against Mr. Sansone or confuse or mislead them in their understanding of what this case is about. This e-mail contains complaints by Mr. Sansone about how he has been treated. While defendant wants to put this e-mail before the jury, defendant has been careful to object to other similar e-mails from Mr. Sansone complaining about defendant's conduct. For instance, Plaintiff's Exh. 39 (attached), in which Mr. Sansone makes similar complaints, has been objected to by defense counsel in the Pretrial Order as "Hearsay (FRE 801); prejudicial and misleading (FRE 403); lacks personal knowledge (FRE 602)." All of those objections could be made by defense counsel against the introduction of Def.'s Exh. 32. But defendant wants its Exhibit 32 in – presumably because defendant likes the reference to the "new

black racist manager." An e-mail that offers very little of probative value, but has great potential to cause prejudice and confusion should not be allowed into evidence.

Courts have typically dealt with the problem of references to race in criminal cases. The Supreme Court has recognized that statements appealing to jurors' racial prejudices may "degrade the administration of justice." *Battle v. United States*, 209 U.S. 36, 39 (1908). Typical examples include the admission of racial slurs or prosecutorial arguments that draw on negative racial stereotypes. The Seventh Circuit has held that "[t]here is no place in a criminal prosecution for gratuitous references to race." *Smith v. Farley*, 59 F.3d 659, 663 (7th Cir. 1995). The same principles should apply in a civil case like this one.

The lack of probative value of this evidence is significant when weighed against its likely prejudicial effect. As the Seventh Circuit has noted, "[t]he amount of prejudice that is acceptable varies according to the amount of probative value the evidence possesses…[such that] less probative evidence will be received only if the risk of prejudice is more remote." *United States v. Boros*, 668 F.3d 901, 909 (7th Cir. 2012) (citation omitted) (internal citation marks omitted). In other words, a district court's discretion regarding evidentiary decisions "does not extend so far as to allow for the inclusion of *prejudicial* evidence having *little* or no bearing on any fact of consequence to the case." *United States v. Bowling*, 770 F.3d 1168, 1177 (7th Cir. 2014). In this case, where the proposed evidence has little or no probative value and the risk of prejudice is substantial,, the e-mail should not be allowed into evidence.

      6.   Motion to exclude introduction of or reference to defendant's Exhibits 23-25 or OSHA investigation and penalty.

Plaintiff moves *in limine* to bar defendant from introducing or referring to defendant's Exhibits 23-25 or offering testimony or arguments about OSHA citations of hazards or safety

violations. Those notices are completely unrelated to the location whether Mr. Sansone parked his van or to his parking practice and are irrelevant to these proceedings.

At the trial of this case, defendant wants to argue that Ms. Branch was motivated by safety concerns when she dictated that Mr. Sansone had to change his parking space, because of an OSHA investigation and penalty, recorded in Defendant's Exhibits 23-25. The OSHA investigation and penalty, however, are completely irrelevant to the safety of Mr. Sansone, his parking location, his practice of parking near Dock Door 33, or anything that could possibly link Mr. Sansone's situation to a safety hazard. This proposed evidence is a red-herring, raising a substantial risk of misleading and confusing the jury.

Defendant's Exh. 23 lists the practices that OSHA was concerned about. They are, in their entirety:

1. Semi-Truck Drivers are pulling away from dock doors without the green light. When the semi-truck drivers pull away from the docks without the green light, it creates a hazard for the operating fork lift operators retrieving and delivering skids of the semi-truck. Semi-Truck Drivers are not trained in regards to the procedures of dock delivery. 5(a)(1)

2. The fork lift trucks are susceptible to falling between the dock and the rear of the semi-truck. 29 CFR 1910.176, 29 CFR 1910.178

3. Managers are allowing Mail Handlers, Clerks, and Part Time Regulars to operate the 3 different types of fork trucks (electric fork lifts, stand ups and mules) without training and certification of proper and safe operation. 29 CFR 1910.178

4. There are no dock locks install[ed] at the docks. 5(a)(1)

Defendant's Exh. 24 lists the practices for which OSHA issued a citation and penalty:

29 CFR 1910.178(l)(1)(i): The employer did not ensure that each powered industrial truck operator was competent to operate a powered industrial truck safely, as demonstrated by the successful completion of the training and evaluation specified in this paragraph (i).

a) The employer allowed an employee on tour one to operate a powered industrial truck without any training or evaluation.

11

Defendant's Exh. 25 is the agreement settling this assessment of a violation, with the Postal

Service agreeing to pay a $4,400 fine.

None of this has anything to do with Mr. Sansone or the safety of his parking

arrangement. All but one of the above concerns are related to the operation of fork lifts *inside*

the facility and docked trucks. The sole exception was the lack of locks on dock doors, which

did not pose any safety concerns related to the parking area. Allowing introduction of these

exhibits, or testimony about these events, would mislead the jury into believing there was

concern by the federal government (through OSHA) about the safety of Mr. Sansone's parking

practice when there was no such thing. In this case, Ms. Branch can testify that she thought there

was a safety risk if Mr. Sansone parked by Dock Door 33. But defendant should not be allowed

to introduce Exhibits 23-25, or offer testimony about them or the investigation by OSHA, as if

they were relevant to the safety of Mr. Sansone's parking arrangement. On their face, they

clearly have nothing to do with Mr. Sansone's parking practice. Because introduction of these

exhibits and testimony about these events would cause jury confusion and would mislead the

jury, in violation of Fed.R.Ev. 403), they should not be allowed.


Respectfully submitted,

/s/ Paul Strauss
Paul Strauss
One of the attorneys for plaintiff Anthony Sansone


Paul Strauss
Chicago Lawyers' Committee for Civil Rights
   Under Law, Inc.
100 N. LaSalle St., Suite 600

Chicago, IL  60602
(312) 202-3649
pstrauss@clcccrul.org

Jacob M. Hamann
Benjamin E. Waldin
EIMER STAHL LLP
224 South Michigan Avenue, Suite 1100
Chicago, IL 60604
(312) 660-7600
jhamann@eimerstahl.com
bwaldin@eimerstahl.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANTHONY SANSONE,                    )
                                    )
            Plaintiff,              )
                                    )
      vs                            ) No. 13 C 3415
                                    )
PATRICK R. DONAHOE,                 )
Postmaster General and             )
UNITED STATES POSTAL               )
SERVICE,                            )
                                    )
            Defendants.             )

        The discovery deposition of ANTHONY
SANSONE, taken in the above-entitled cause before
Steven J. Brickey, CSR, State of Illinois, at 100
North LaSalle Street, Chicago, Illinois, on the
16th day of May, A.D., 2014, commencing at 9:58
o'clock a.m.

ANTHONY SONSONE
May 16, 2014

Page 6

1                    (Witness sworn.)

2                 ANTHONY SANSONE

3    called as a witness herein, having been first duly

4    sworn, was examined and testified as follows:

5                 E X A M I N A T I O N

6    BY MR. COOKE:

7         Q.    Will you please state and spell your

8    name for the record.

9         A.    Anthony Frank Sansone,

10   A-N-T-H-O-N-Y, F-R-A-N-K, S-A-N-S-O-N-E.

11        Q.    I understand that you can pronounce

12   your name Sansone like a scone without the C or

13   Sansone like the Sony like the electronics

14   company.  Do you have a preference which one?

15        A.    No, I don't.  When I was a young --

16   when I was young, Tony Sansone was like -- Tony

17   Sansone.

18        Q.    So if I say Sansone?

19        A.    That's fine.

20        Q.    That's fine.  Okay.  My name is John

21   Cooke.  I'm an Assistant US Attorney.  I represent

22   the Postmaster General in this case.  Have you

23   ever been deposed before?

24        A.    I may have.  Yeah, I think one time.

25   One time.  I don't think it was like this, though.

L.A. Court Reporters, L.L.C.
312-419-9292

ANTHONY SONSONE
May 16, 2014

Page 29

1      Q.      Can you give me an estimate of how
2  frequently you would communicate with her by phone
3  or in person?
4      A.      I would see her, you know, good
5  morning, whatever it is, but there really would be
6  nothing more to it than that.
7      Q.      What about Ms. Branch, how
8  frequently did you communicate with her?
9      A.      Never.  I'd say good morning when I
10  seen her and that would be about it.
11                     (Document marked as Government
12                      Exhibit No. 2 for
13                      identification.)
14  BY MR. COOKE:
15      Q.      I just want to take a moment to
16  introduce a couple of exhibits.  What has been
17  marked as Exhibit 2, do you recognize that
18  document?
19      A.      What about it?
20      Q.      Do you recognize it?
21      A.      Yeah, it's my complaint.
22      Q.      Okay.  Can you take a peek at
23  Exhibit 3.  Are these your responses to the Postal
24  Service's interrogatories to you?
25

ANTHONY SONSONE
May 16, 2014

Page 30

1              (Document marked as Government

2              Exhibit No. 3 for

3              identification.)

4     BY THE WITNESS:

5          A.    Yes, they are.

6     BY MR. COOKE:

7          Q.    **Now, you signed your answers and**

8     **verified that all of them are true, is that**

9     **correct?**

10         A.    These?

11         Q.    **Correct.**

12         A.    I'm sure I did.

13         Q.    **Can you verify that by looking at**

14    **the last page?**

15         A.    Yup, that's me.

16         Q.    **And when you verified the truth of**

17    **your answers, had you reviewed them closely**

18    **beforehand?**

19         A.    I believe I did.  Why?  Is there a

20    problem with them?

21         Q.    **Just asking you some basic**

22    **questions.**

23         A.    Yes, I believe I went through

24    everything and it was the way it happened.

25         Q.    **Okay.  Now, can you go back to**

ANTHONY SONSONE
May 16, 2014

Page 31

1   Exhibit 2, please, and look at the last page of

2   your complaint at what is called your prayer for

3   relief.

4           A.      My prayer for relief?

5                   MR. STRAUSS:   That's this part.

6   BY MR. COOKE:

7           Q.      Do you see Paragraph B where you

8   request to be rehired by the Postal Service?

9           A.      I didn't request that.  I pursued

10  this matter until it couldn't be pursued anymore

11  and I didn't want to go back to that facility.

12          Q.      So when you filed your complaint in

13  May of 2013, is it your testimony that you did not

14  wish to be rehired?

15          A.      No.

16          Q.      I'm sorry?

17          A.      I did not wish to be rehired.

18          Q.      When you filed your complaint, you

19  did not wish to be rehired, is that a correct

20  statement?

21          A.      When I filed my EEO complaint?

22          Q.      No, the complaint that is marked as

23  Exhibit 2, your complaint in the federal case that

24  we're here for today.

25          A.      No, I did not want to be rehired.

ANTHONY SONSONE
May 16, 2014

Page 180

1  that we're saying here.  The exact same thing that

2  I've been saying from day one I say today is just

3  what happened, the truth what happened.

4      Q.    Did you tell her during that

5  conversation that you did not wish to have a

6  dialogue about the parking accommodation issue any

7  longer?

8      A.    By that time, I'm sure, yes.  My

9  mind was made up to stop trying, to stop fighting.

10                 (Document marked as Government

11                 Exhibit No. 41 for

12                 identification.)

13  BY MR. COOKE:

14      Q.    Do you recognize the document that

15  is marked Exhibit 41?

16      A.    Yes.

17      Q.    Was this your Notice of Occupational

18  Disease and Claim for a Compensation -- no.  Do I

19  have this wrong again?

20           MR. STRAUSS:  Forty-one is the EEO

21  complaint.

22           MR. COOKE:  Let's talk about the EEO

23  complaint.

24  BY MR. COOKE:

25      Q.    Is this your EEO complaint?

ANTHONY SONSONE
May 16, 2014

Page 181

1      A.      Yes.

2      Q.      **And this is 41?**

3      A.      Yes.

4      Q.      Okay.  So your EEO complaint you

5   signed this on December 28th, 2011, is that right?

6      A.      Yes.  Or the 16th -- yeah, the 28th.

7      Q.      **Do you recall when you submitted it?**

8      A.      They received it the 30th.  So it

9   had to be that day.

10     Q.      **And did you attach documents to this**

11  **complaint?**

12     A.      Like what kind of documents?  I must

13  have.

14     Q.      **Do you recall what those documents**

15  **were or the nature of the documents?**

16     A.      No, I don't recall what it was.

17     Q.      **All right.**

18     A.      It may have been e-mails.  It may

19  have been pictures like from what you were showing

20  me from Google Maps or whatever.  I don't really

21  recall what I sent her.

22                  (Document marked as Government

23                  Exhibit No. 42 for

24                  identification.)

25

L.A. Court Reporters, L.L.C.
312-419-9292

**UNITED STATES POSTAL SERVICE** ®

## EEO Complaint of Discrimination in the Postal Service
(See Instructions and Privacy Act Statement on Reverse)

| | | |
|---|---|---|
| 1. Name **ANTHONY SANSONE** | 2. SSN or EIN 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 | 3. Case No. 1J-609-0001-12 |

| | |
|---|---|
| 4a. Mailing Address (Street or P.O. Box) 11404 S. NORMANDY AVE | 4b. City, State, and Zip +4 Worth, IL. 60482 |

| | | |
|---|---|---|
| 5. Email Address * AFS58@Comcast.NET | 6. Home Phone (708) 361-8259 | 7. Work Phone (708) 583-4422 |

| | | |
|---|---|---|
| 8. Position Title (USPS Employees Only) Supv. Maint. Oper. | 9. Grade Level (USPS Employees Only) EAS-17 | 10. Do You Have Veteran's Preference Eligibility ☐ Yes ☒ No |

| | |
|---|---|
| 11. Installation Where You Believe Discrimination Occurred (Identify Installation, City, State, and Zip+4) Chicago Network Distribution Cntr. 7500 Roosevelt Rd. Forest Park IL. 60130-2296 | 12. Name & Title of Person(s) Who Took the Action(s) You Allege Was Discriminatory MS. Rudy BRANCH Plant MANAGER |

| | |
|---|---|
| 13a. Name of Your Designated Representative To be determined Later | 13b. Title |

| | |
|---|---|
| 13c. Mailing Address (Street or P.O. Box) | 13d. City, State, and ZIP + 4 |

| | | |
|---|---|---|
| 13e. Email Address * | 13f. Home Phone ( ) | 13g. Work Phone ( ) |

* Providing this information will authorize the Postal Service to send important documents electronically.

| 14. Type of Discrimination You Are Alleging | | 15. Date on Which Alleged Act(s) of Discrimination Took Place |
|---|---|---|
| ☐ Race (Specify): | ☐ Sex (Specify): | |
| ☐ Color (Specify): | ☐ Age (40+) (Specify): | |
| ☐ Religion (Specify): | ☐ Retaliation (Specify Prior EEO Activity): | |
| ☐ National Origin (Specify): | ☒ Disability (Specify): | |
| | ☐ Genetic Information (Specify): | |

16. Explain the specific action(s) or situation(s) that resulted in you alleging that you believe you were discriminated against (treated differently than other employees or applicants) because of your race, color, religion, sex, age (40+), national origin, genetic information, or disability. Note that if your allegation is like or related to a previous complaint, that complaint may be amended. 29 C.F.R. § 1616.106(d)

I am confined to a wheelchair. Upper Management accomodated me with easy access since 1999. On 10-2-11 plant Manager Rudy Branch was going to tow my Van, leaving me stranded. Ms. Branch Revoked my Parking accomodations, and no reason was given as to why.

(see Attached Documents)

17. What Remedy Are You Seeking to Resolve this Complaint? To be made whole of all time lost since 10-2-11. All medical and legal fees retured putting this incident. To be compensated for damages caused due to Ms. Branches actions.

| 18. Did You Discuss Your Complaint with a Dispute Resolution Specialist or a REDRESS Mediator? |
|---|
| ☒ Yes (Date you received the Notice of Final Interview): 12-17-11     ☐ No |

| | |
|---|---|
| 19a. Signature of Dispute Resolution Specialist *Eva Aguillon* | 19b. Date 12/16/11 |

| | | |
|---|---|---|
| 20. Signature of Complainant or Complainant's Attorney *Anthony T. Sansone* | RECEIVED DEC 30 2011 NEEOISO | 21. Date of this Complaint 12-28-11 |

PS Form 2565, October 2010 (Page 1 of 2)

DEFENDANT'S EXHIBIT 4 Sansone dep

Anthony Sansone vs. USPS
Case Number 13-CV-03415

000489
Formal Complaint
Page 1 of 1

**Anthony F. Sansone**

| | |
|---|---|
| **From:** | Anthony F. Sansone [afs58@comcast.net] |
| **Sent:** | Friday, October 28, 2011 1:20 PM |
| **To:** | 'Von Rhein, Chuck - Forest Park, IL' |
| **Subject:** | my job |

Chuck,

           As you know, this is very disturbing for me. I have to take pills to sleep and when I wake up I start thinking about this situation all over again. I used to think that I was a valued employee and that my efforts were appreciated, I guess I was wrong. As I go thru all the e-mails and think of all the attempts made to stop this nonsense, it upsets me even more. When the reasonable accommodation committee was at first ignored and then rejected by Ms. Branch, it was a slap in my face. Now the committee sent me a letter asking me to provide "proof of my disability "so they could pursue this issue. ENOUGH.

           I'm asking you to call Mr. Grieser and tell him to stop pursuing this matter. I called shared services and requested a disability package. I feel my drive has been shattered and don't see how I could even go back to such an environment. I would like you to do what's necessary to change my leave from Oct. 2 to c.o.p.. And get my AL back. I filed a EEO complaint against Ms. Branch, this woman has damaged me and I hope someone make her aware of it.

    Please give me a call to discuss this further.    Thanks

3/13/2012

00128


Plaintiff's
Exhibit 39

U.S. Department of Labor
Occupational Safety and Health Administration

## Notice of Alleged Safety or Health Hazards

June 03, Friday 2011

| | | Complaint Number | 47774 |
|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| Establishment Name | Chicago Network Distribution Center | | | |
| Site Address | 7500 West Roosevelt Blvd., | | | |
| | FOREST PARK, IL 60130 | | | |
| | Site Phone | | Site FAX | |
| Mailing Address | 7500 West Roosevelt Blvd., | | | |
| | FOREST PARK, IL 60130 | | | |
| | Mail Phone | | Mail FAX | |
| Management Official | Claudell Jackson | | Telephone | 7085834200 |
| Type of Business | Mail Bulk Center | | | |
| Primary SIC | | | Primary NAICS | 491110 - Postal Service |

**HAZARD DESCRIPTION/LOCATION.** Describe briefly the hazard(s) which you believe exist. Include the approximate number of employees exposed to or threatened by each hazard. Specify the particular building or worksite where the alleged violation exists.

1. Semi-Truck Drivers are pulling away from the dock doors without the green light. When the semi-truck drivers pull away from the docks without the green light, it creates a hazard for the operating fork truck operators retrieving and delivering skids of the semi-truck. Semi-Truck Drivers are not trained in regards to the procedures of dock delivery. 5(a)(1)

2. The fork trucks are susceptive to falling in between the dock and the rear of the semi-truck. 29 CFR 1910.176, 29 CFR 1910.178

3. Managers are allowing Mail Handlers, Clerks and Part Time Regulars to operate the 3 different types of fork trucks (electric fork lifts, stand ups and mules) without training and certification of proper and safe operation. 29 CFR 1910.178

4. There are no dock locks install at the docks. 5(a)(i)

Defendant's
Exhibit 23

Anthony Sansone vs. USPS
Case Number 13-CV-03415

000588

**U.S. Department of Labor**
Occupational Safety and Health Administration

Inspection Number: 63167
Inspection Date(s): 06/10/2011 - 08/11/2011
Issuance Date: 08/24/2011



Citation and Notification of Penalty

Company Name: U.S. POSTAL SERVICE, dba Chicago Network Distribution Center
Inspection Site:

Citation 1 Item 1    Type of Violation: **Serious**

29 CFR 1910.178(l)(1)(i): The employer did not ensure that each powered industrial truck operator was competent to operate a powered industrial truck safely, as demonstrated by the successful completion of the training and evaluation specified in this paragraph (l).

a) The employer allowed an employee on tour one to operate a powered industrial truck without any training or evaluation.

In accordance with 29 CFR 1903.19(d), abatement certification is required for this violation (using the CERTIFICATION OF CORRECTIVE ACTION WORKSHEET), and in addition, documentation demonstrating that abatement is complete must be included with your certification. This documentation may include, but is not limited to, evidence of the purchase or repair of the equipment, photographic or video evidence of abatement, or other written records.

ABATEMENT DOCUMENTATION REQUIRED FOR THIS ITEM

Date by which Violation must be Abated:     09/07/2011
Proposed Penalty:                           $3400.00

*expressed to  — EJ530146780US*
*OSHA 9/6/11*

*Defendant's*
*Exhibit 24*

Citation and Notification of Penalty                Page 6 of 9                    OSHA-2(Rev. 9/93)

Anthony Sansone vs. USPS
Case Number 13-CV-03415                                                           000215

**U.S. Department of Labor**

Occupational Safety and Health Administration
Chicago North Area Office
701 Lee Street, Suite 950
Des Plaines, Illinois 60016
(847) 803-4800 Fax: (847) 390-8220



*" In lieu of a formal invoice"*
*Felicia C. Coleman*   9/2/2011

In the Matter of:            U.S. Postal Service dba Chicago Network Distribution Center
OSHA No.(s):                 Inspection No. 63167

## EXPEDITED INFORMAL SETTLEMENT AGREEMENT

The undersigned EMPLOYER and the undersigned Occupational Safety and Health Administration (OSHA), in settlement of the above referenced Citation(s) and Notification(s) of Penalty which were issued on August 24, 2011, hereby agree as follows:

1. The EMPLOYER agrees to correct the violations as cited in the above referenced citations.

2. The EMPLOYER agrees to provide evidence (abatement documentation) of the actions taken to correct the cited violations.

3. Upon correction of all violations, the EMPLOYER agrees to provide written certification to the Area Director that all of the violations have been corrected. The EMPLOYER agrees to post a copy of the written certification for a period of three (3) days in the place the citations were posted as described in paragraph 7 of this AGREEMENT.

4. OSHA agrees that the total penalty is amended to $3,080.00. Failure of the EMPLOYER to comply with the terms of this AGREEMENT shall cause the penalty to revert to the initially proposed penalty of $4,400.00.

5. In consideration of the foregoing amendments and/or modifications to the citations, the EMPLOYER hereby waives its right to contest said citations pursuant to Section 10(c) of the Occupational Safety and Health Act of 1970. It is understood and agreed by the Occupational Safety and Health Administration and the EMPLOYER that the citations as amended and/or modified by this agreement shall be deemed a final order not subject to review by any court or agency.

6. The EMPLOYER agrees to immediately post a copy of this Settlement Agreement in the same manner and place as the Citations (Citations are required by law to be posted in a prominent place at or near the location of the violations). Citations must remain posted until the violations cited have been corrected, or for three (3) working days (excluding weekends and Federal Holidays, whichever is longer.)

7. Each party hereby agrees to bear its own fees and other expenses incurred by such party in connection with any stage of this proceeding.

*Nelson K. Smith* 9/1/11
For: U.S. Post Service dba Chicago
Network Distribution Center
(signature and date)

For: Occupational Safety and Health

Administration
Diane Turek, Area Director
(signature and date)

*Defendant's Exhibit 25*

*Scanned to Nelson Smith 9/7/11*

Anthony Sansone vs. USPS
Case Number 13-CV-03415

000212

**From:** Anthony F. Sansone [mailto:afs58@comcast.net]
**Sent:** Wednesday, November 30, 2011 2:38 PM
**To:** Ferrera, Isabelle F - Chicago, IL
**Subject:** FW: 10-02-2011 incicent

I began employment at the Chicago Bulk Mail Center February 21, 1981. I was promoted to Supervisor, Maintenance Operations in June 1987. I was diagnosed with multiple sclerosis in late 1991. I have had many other health issues, including a heart attack since. In 1999, I lost the use of my legs and have been confined to a wheelchair since. I began to commute to work in my own handicapped accessible vehicle. This vehicle has a side ramp which deploys on the passenger side. To provide safe access to the facility, upper management at that point, determined I should park directly outside my office where there is a ramp 30 feet away with an automatic door. I have been parking in this same location without any incidents for the past 12 years during which there have been several different plant managers.
On September 18, 2011, under the instructions from Ms. Branch (plant manager) , my supervisor, Chuck Von Rhein, informed me I was no longer allowed to park where I have been parking for the past 12 years. No reason was given for this change. When I asked how I should gain access to the facility I was instructed to park by motor vehicle (where there is no

1

USA000530

accessible parking) and roll in my wheelchair approximately 400 feet in a busy semi-truck thoroughfare or park in front of the building where there is handicapped accessible parking. Since there are no handicapped accessible doors in the front entrance to the facility I was told I could continue using the ramp I had been using for the past 12 years, in the dock area. This would mean I would have to roll in my wheelchair approximately 1,200 or more feet again through the semi-truck thoroughfare. This was unacceptable as far as my safety was concerned.

With the permission of Maintenance Manager LaShawn Jacobs, I continued to park where I had been parking for the past 12 years until this issue could be resolved. On Sunday, October 2, 2011, Ms. Branch entered the dock area, saw my van and then told Ms. Jacobs that she was going to have my vehicle towed. LaShawn Jacobs informed me of this via email. At that time, I immediately left the facility in fear of having my van towed and me being stranded. No attempt has been made to accommodate me with adequate parking, automatic doors and a safe entrance to the facility. This has caused extreme harm to my health from chest pains, headaches, numbness, anxiety attacks, blurred vision and a inability to sleep. All stress related due to this incident. Ms. Branch has taken my livelihood away from me for no apparent reason.

Anthony F. Sansone

Defendant's
Exhibit 29

**From:** Ferrera, Isabelle F - Chicago, IL
**Sent:** Friday, December 02, 2011 12:26 PM
**To:** Anthony F. Sansone
**Subject:** Anthony Sansone - response to sansone

Dear Mr. Sansone,

Thank you for your emails. I understand you have been made aware of Ms. Branch's willingness to continue discussing possible parking accommodations. Accordingly, I am confused by your assertions that (1) "[n]o attempt has been made to accommodate [you] with adequate parking, automatic doors and a safe entrance to the facility," and (2) "Ms. Branch has taken [your] livelihood away . . ." Furthermore, you indicated to me previously that you do not wish to return to work. If this is no longer the case (or I misunderstood your intentions), **please contact me as soon as possible**, so that I can make arrangements -- either in person or telephonically -- for you to engage in a dialogue with Ms. Branch. This dialogue will include a discussion of your physical limitations, and potential accommodations which would enable you to perform your job effectively and park safely. As you know, Ms. Branch feels your previous parking spot posed a safety hazard. (If you respond via email, please include information regarding your date/time availability.)

I look forward to hearing from you.

Sincerely,
Isabelle Ferrera
USPS Attorney
312-669-5900

Defendants
Exb. 30

**From:** Anthony F. Sansone [mailto:afs58@comcast.net]
**Sent:** Saturday, December 03, 2011 10:51 AM
**To:** Ferrera, Isabelle F - Chicago, IL
**Subject:** RE: Anthony Sansone

Dear Ms. Ferrera,
              Please call me at your earliest convienance . Home:708-361-8759 or Cell: 708-370-8429. any time is good.........

Defendant's
Exhibit 31

**From:** Ferrera, Isabelle F - Chicago, IL
**Sent:** Monday, December 05, 2011 9:52 AM
**To:** Anthony F. Sansone
**Subject:** RE: Anthony Sansone

Dear Mr. Sansone,
Thanks very much for speaking with me this morning. I understand that you are not interested in the dialogue I propose. As we discussed previously, my role in connection with this matter was to explore with you a possible resolution of the discrimination claim you raised in the EEO Pre-complaint Counseling process. The processing of your EEO Pre-Complaint has continued and will continue in the usual manner. Thank you again for taking the time to speak with me.
Sincerely,
Isabelle Ferrera
USPS Attorney

Exhibit
31-A

Page 1 of 1

**Diane Hill**

| From: | Anthony F. Sansone [afs58@comcast.net] |
|---|---|
| Sent: | Thursday, December 29, 2011 2:52 PM |
| To: | neuro-diane@sbcglobal.net |
| Subject: | FW: Reasonable Accomodation Committee |

Hello Diane,

Attached is what I need my doctors to complete to "prove my disability" as to why I require reasonable accommodations.

I feel this is a slap in my face. After 12 yrs. of being accommodated, being encouraged by my peers to continue to stay productive, it comes to this. As I told you, I have been off of work since 10-2-11 when I was threatened that my van was going to be towed. I claimed a accident and have been off on stress leave since. The case is still being decided by OWCP which means I'm not getting paid and that is stressing me out even more. I filed a EEO complaint against this new racist black manager which is why I need this paper work filled out, but I'm sure that will be a long crawn out process. I also filed for disability. I will no longer submit myself to the new environment at the USPS.

Please call me if you have any questions.     Thank You

Defendant's
Exhibit 32

1/4/2012

348


UNITED STATES
POSTAL SERVICE

October 14, 2011

Anthony Sansone
11404 S. Normandy Ave.
Worth. IL. 60482-2136

Delivery Confirmation Number
03100480000242905701

Dear Mr. Sansone.

Your request for reasonable accommodations has been forwarded the Central Illinois District
Reasonable Accommodation Committee for consideration. Before the Committee can proceed, it
will need additional medical information concerning your condition and the specific limitations that
it imposes.

The Reasonable Accommodations Committee requires that you provide a comprehensive medical
report from your treating physician. The medical report must include the following information: 1)
current diagnosis; 2) prognosis; 3) list of medical treatments and medications and what effect the
treatments have had on your condition; 4) copies of all pertinent test results completed within the
past year: 5) a statement addressing each restriction in detail. 6) a statement addressing
recommending parking location, egress and ingress recommendations and the medical rationale
supporting these recommendations; and 7) a statement of the impact your condition, when
properly treated, has on your activities of daily living.

The information which you and your physician provides. will be handled and maintained in
accordance with Privacy Act guidelines contained in the <u>Administrative Support Manual (ASM) and</u>
<u>AS-353.</u>

Please send the requested information to Occupational Health Nurse Administrator Linda Dodson,
6801 W. 73rd St., Bedford Park, IL. 60499-9442. within thirty (30) calendar days of the date of your
receipt of this letter. If you have any questions, you may contact Linda Dodson. Occupational
Health Nurse Administrator at 708-563-7673.

Sincerely,

Stephen N. Grieser, Chairperson
Central Illinois District
Reasonable Accommodations Committee

cc: Ruby Branch
    LaShawn Jacobs
    Linda Dodson