IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **ANTHONY SANSONE**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 13 C 3415 |
| | ) | |
| **MEGAN BRENNAN**, Postmaster General, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

After this Court issued the parties' jointly submitted final pretrial order ("FPTO"), the counsel for each side -- Anthony Sansone ("Sansone") as plaintiff and Postmaster General Megan Brennan ("Brennan") as defendant -- submitted the motions in limine that had been forecast in the FPTO, and each then responded to the other side's motions. In contemplation of the forthcoming trial, this memorandum opinion and order will deal with those motions, first those of plaintiff Sansone (cited "Sansone No. --"), then those of Brennan (cited "Brennan No. --").

Although each litigant's submissions have been substantially more extensive than this opinion will be in expounding the predicates for his or her positions in support of and in opposition to the motions, for the most part this Court sees no need to be similarly expansive in its treatment. Instead it will sometimes simply refer to a party's memorandum (cited "Mem." or "R. Mem.") as the basis for its ruling.

But even before this opinion turns to that task, it may be worth exploring a question of principle posed by certain of the arguments advanced by Brennan's counsel that strike this Court

as more than dubious. As is true whenever the conduct of some branch of the federal government is in issue, Brennan is represented by a member of the United States Attorney's Office. Query: Does that position as a representative of the government, which really means representative of the people of the United States,[1] suggest that the conduct of such a lawyer should be measured by a more demanding yardstick than that applicable to lawyers for private clients?

In the ABA's Model Rules of Professional Conduct, a number of those Rules (Model Rules 3.1 to 3.9) are grouped under the rubric "Advocate," largely reflecting the lawyer's duty of loyalty to his or her client. But advocacy has its limits, so that Rule 3.1 is captioned "<u>Meritorious</u> Claims and <u>Contentions</u>" (emphasis added) and Rule 3.3 is captioned "Candor Toward the Tribunal," with the latter Rule teaching that loyalty to the client is not unbounded. And one difference between lawyering for a private client and lawyering for the government (that is, for the people of the United States) -- a difference on which this Court, despite its more than three decades in the private practice followed by more than three decades as a judge, had really not been called upon to focus before the current analysis -- is that the private client's lawyer who is called upon to advance a questionable position is free to withdraw from representation rather than taking that stance, while a government lawyer does not enjoy that freedom.

Having posed that philosophical query, this Court has resolved it by recognizing that the obvious inability to define the government lawyer's role by articulating some objective standard

---

[1] In that respect it does not seem merely symbolic that criminal prosecutions are captioned "United States v. --," or in the state system "People of the State of Illinois v. --."

that reflects the just-stated distinction must perforce leave the matter to the best judgment of the government lawyer involved in a case. Thus this opinion has not applied stricter scrutiny to the positions advanced by government counsel, even though such an approach taken by the lawyer himself or herself might well be justified conceptually. In any event, that consideration has made no difference in the result here, for the analysis that follows reveals a substantial number of areas in which government counsel has fallen short by any reasonable standard.

### **Sansone's Motions**

Sansone No. 1 is described this way at his Mem. 1:[2]

> Plaintiff moves in limine that defendant be barred from stating that plaintiff, in his original complaint, sought reinstatement as part of his prayer for relief, that defendant be barred from asking plaintiff questions about that aspect of the prayer for relief in his original complaint, and that defendant's opinion witness, Dr. Diana Goldstein, be barred from testifying about that aspect of plaintiff's original prayer for relief. Testimony about this superseded pleading is likely to confuse the issues and the jury.

As Sansone's memorandum goes on to explain, the original Complaint, drafted of course by counsel, contained a "boiler-plate prayer for relief" that included a request for reinstatement. And that is described in the motion as a lawyer's error, an assertion supported by a citation to Sansone's deposition, and the motion then correctly states that the claimed error was corrected in both the first amended complaint and a second amended complaint by omitting the request for reinstatement.

In an attempted response to that assertion, Brennan's memorandum points to aspects of Sansone's conduct that evidence his desire to obtain a reasonable accommodation -- an

---

[2] Memoranda in support of a motion are cited "Mem. --," while memoranda in response are cited "Mem. R. --."

accommodation rejected by the Postal Service -- that would have permitted him to continue working despite his serious disability (this action is brought under the Americans With Disabilities Act). In that regard this Court will certainly allow evidence and argument that recount Sansone's statements and conduct, but nothing really supports the contention that the lawyer-drafted pleading ought to be added to the mix.

On that score our Court of Appeals has dealt with a like situation in <u>DePaepe v. Gen'l Motors Corp.</u>, 141 F.3d 715, 719 (7th Cir. 1998), where it upheld the trial judge's exclusion of evidence "to keep the jury focused on the claim of liability that requires decisions," rather than "allow[ing] the defendant to put the plaintiff's litigation tactics on trial." And to that end <u>DePaepe</u> appropriately called into play the discretion conferred by Fed. R. Evid. 403 in balancing the danger of such matters as creating "unfair prejudice" against the minimal (if any) probative value of the challenged evidence.

Any knowledgeable litigator knows (1) that the task of drafting pleadings is that of the lawyer and not the client and (2) that even a client who is given a draft pleading to review before it is filed reads it through a layperson's lens, not a lawyer's. It was in encountering resistance by government counsel on this issue right off the bat that this Court was first led to raise the question that has been posed earlier. In brief, Sansone No. 1 is granted.

Sansone No. 2 is captioned "Motion to preclude testimony or argument that Mr. Sansone has received disability retirement benefits." In that respect it will be remembered, and the litigants have agreed, "that all issues related to Mr. Sansone's loss of pay are equitable issues to be decided solely by the Court if the jury returns a liability verdict in favor of the plaintiff" (Sansone Mem. 4).

In response to that motion Brennan's counsel unpersuasively contends that Sansone's decision to take a disability retirement "evidenc[es] Sansone's responsibility for the breakdown in the interaction process" (Brennan R. Mem. 3) and goes on to urge that any invocation of the collateral source rule is inappropriate "because the source of the retirement benefits -- the federal government -- is not collateral" (id.). That assertion, understandably proffered without any support at all from authority, distorts the concept of the term "collateral" in the doctrine that is commonly described as the "collateral source rule," as that doctrine has been stated and applied in the caselaw (including but not at all limited to the cases cited at Sansone's Mem. 4 and 5). Again Brennan's counsel's approach does that counsel no credit, and Sansone No. 2 is also granted.

Next comes Sansone's No. 3, which his counsel captions this way:

> Motion to preclude testimony about conversations and e-mails with Postal Service attorney Isabelle Ferrera.

On that score Sansone's counsel invokes Fed. R. Evid. 408, characterizing "[t]hose discussions [as] settlement talks to see if Mr. Sanasone's EEO complaint could be settled" (Sansone Mem. 5).

Brennan R. Mem. 3-6 begins by arguing that the e-mails between Sansone and Ferrera between November 30 and December 3, 2011 "evidence Sansone's responsibility for the breakdown in the interactive process." But Ferrera's own December 5, 2011 e-mail to Sansone directly confirms the latter's Fed. R. Evid. 508 characterization:

> As we discussed previously, my role in connection with this matter was to explore with you a possible resolution of the discrimination claim you raised in the EEO Pre-complaint Counseling process.

In an effort to deflect the plain meaning of that statement, Brennan R. Mem. 4 emphasizes that Brennan "never made an offer of settlement to Sansone." But although that contention takes the

exchange between the two out of Fed. R. Evid. 408(a)(1), Rule 408(a)(2) also prohibits evidence of "conduct or a statement made during compromise negotiations about the claim" -- and that is precisely what Ferrera's December 5, 2011 e-mail describes.

As if to confirm the lack of forthrightness in the position urged by Brennan's counsel, Brennan R. Mem. 5 labels as "impossible" Sansone's assertion that Ferrera's December 5 e-mail "contains evidence of her attempt to settle [his] complaint," and it seeks to ground that damning characterization on the fact that it was not until three weeks later -- December 30, 2011 -- that the Postal Service received Sansone's EEO complaint. But as already stated, Ferrera's December 5 e-mail referred to "the discrimination claim you raised in the EEO Pre-complaint Counseling process" (emphasis added) -- and that takes the air out of counsel's balloon.

What has been said here is a good deal lengthier than this Court had originally intended, but it so demonstrates the troubling mindset that Brennan's counsel appears to have brought to the discussion that such a detailed showing of its poverty was justified. In sum, Sansone No. 3 is granted for multiple reasons.

Next, Sansone No. 4 deals with the Brennan R. Mem. 5 effort to admit into evidence these two statements from Ferrera's December 2, 2011 e-mail:[3]

> I understand you have been made aware of Ms. Branch's willingness to continue discussing possible parking accommodations.

*   *   *

---

[3] Unlike the rest of Brennan's responsive memorandum, which deals with each Sansone motion on a one-to-one basis, this aspect of Brennan's response is coupled with her response to Sansone No. 3. This opinion treats with the subject separately, as Sansone has done.

> As you know, Ms. Branch feels your previous parking spot posed a safety hazard.[4]

Both of those statements are efforts to inject into the case matters about which Ferrera obviously lacks any personal knowledge. Simply put, they are exemplary of hearsay and of the very reason that hearsay evidence is inadmissible. Moreover, Sansone Mem. 7 and 8 present other persuasive grounds of a substantive nature for keeping those statements out of the case. So Sansone No. 4 is granted for more than one reason as well.

Next, Sansone No. 5 seeks to exclude the introduction of a reference to Defendant's Ex. 32, a Sansone e-mail to a medical provider in which he sought help in obtaining medical records to pursue his EEO claim and wrote in part:

> I filed a [sic] EEO complaint against this new black racist manager which is why I need this paper work.

As might be expected, Brennan's counsel falls back on his all-purpose attempted justification that it "bolster[s] the Postal Service's argument that he was responsible for the breakdown in the interactive process" (Brennan R. Mem. 6) -- never mind that the challenged sentence has no more than limited possible probative force and that it would clearly inject an obvious potential for "unfair prejudice." which Fed. R. Evid. 403 aims to eliminate from trials -- and most particularly from jury trials.

Sansone Mem. 9 and 10 buttress Sansone's position for exclusion of that quoted sentence with citations to persuasive authority, but in any event the balancing dictated by Fed. R. Evid. 403 calls for granting Brennan No. 5 on its own. This Court does so.

---

[4] [Footnote by this Court] Consistently with this Court's customary practice of referring to all individuals by the use of their last names as a matter of convenience, all references to Ruby Branch in the text will simply take the form "Branch."

Finally, Sansone No. 6 seeks to exclude the introduction of any reference to Defendant's Exs. 23 through 25 or to the OSHA investigations, citations and penalty that are the subject of those exhibits. Though Sansone Mem. 11 asserts that "[t]his proposed evidence is a red-herring, raising a substantial risk of misleading and confusing the jury," Brennan R. Mem. 7-8 contends that those "findings were among the safety concerns that informed [Branch's] determination that it was unsafe for Sansone to park his vehicle by the docks and to operate his wheelchair along a ramp meant for sturdier maintenance vehicles."

Each of those positions is partially sound, but each is not totally persuasive. To exclude from evidence the information that OSHA had investigated problems at the docks that had presented safety hazards created by semi-truck drivers and had then imposed sanctions on the Postal Service for some of that activity would deprive Branch of the opportunity to assert that her concerns on that score motivated her decision to deny the accommodation that Sansone had received in the past because of his disabilities, while on the other hand to place the very different -- and wholly tangential -- particulars of the semi-truck drivers' safety infringements before the jury would create a digression unnecessary to its resolution of the issues in the case.

Accordingly Sansone No. 6 is granted in part and denied in part. Defendants' Exs. 23 through 25 will be admitted into evidence, but they will not be exhibited to the jury or included among the evidentiary matters delivered to the jury room for use during the jury's deliberations. Instead counsel for the parties are ordered to enter into a stipulation that will refer briefly (1) to the existence of an OSHA investigation, (2) in general, rather than particularized, terms to the nature of the semi-truck drivers' conduct that OSHA found wanting and (3) to OSHA's imposition on the Postal Service of a citation and a monetary penalty in the $3,000 range.

Relatedly, Branch is to be instructed to steer clear of particulars during her testimony, limiting herself instead to the generic summary contained in that stipulation.

Hence Brennan and her counsel may be viewed overall as having batted something less than .167, rather than being shut out entirely on Sansone's motions. That said, this opinion turns to Brennan's motions in limine.

### **Brennan's Motions**

Unfortunately Brennan's counsel begins his extensive submission on her motions in limine with a quibble that does not inspire confidence that the kind of approach too often manifested in the matters with which this opinion has already dealt will not extend to Brennan's own motions as well. Here, for example, is the caption of Brennan No. I:

> This Is Not an Employment Discrimination Lawsuit and Sansone Should Be Precluded from Referring to It as a "Discrimination" Suit.

But as Sansone R. Mem. 1 and 2 say, Sansone has brought suit under the Americans With Disabilities Act ("ADA"), which itself specifically attaches a discrimination label to violations of that statute.

In part Sansone R. Mem. 1 quotes the references to discrimination contained in Instruction 4.01 of the Federal Civil Jury Instructions of the Seventh Circuit prepared by that court's Committee on Pattern Civil Jury Instructions, an instruction designed to be used in ADA cases. Indeed, Instruction 4.01 is only one of 15 instruction forms that have been grouped under the rubric entitled "Employment and Discrimination: Americans With Disabilities Act."

In candor, this Court sees no reasonable predicate for a contention that Fed. R. Evid. 403 would be called into play by employing "discrimination suit" as a descriptive term. Needless to

say, this Court expects Sansone's counsel to cabin such usage responsibly, but Brennan No. I must be and is denied.

Next, Brennan also seeks to keep from the jury evidence of what Brennan Mem. 2 labels as Brennan No. II: "Sansone's Irrelevant Job Performance." That extraordinarily undeserved "irrelevant" characterization is wholly without merit -- it is effectively torpedoed by Sansone's R. Mem. 2 through 4, which explain in detail the importance of such information for the jury's consideration in reaching a verdict. Hence Brennan No. II is also denied.

In a further effort to keep from the jury facts that it might reasonably consider in reaching a verdict, Brennan No. III seeks to exclude "Evidence of Sansone's Physical Limitations Outisde [of] Work" (Brennan Mem. 3). Once again Sansone's response to that restrictive motion provides a lucid explanation of why the motion should be denied, in part (but not entirely) by pointing to what in court cases is referred to as the "eggshell skull principle" -- the idea that a party who has inflicted harm on another party takes the victim as he finds him. On that ground and for the added reasons advanced at Sansone R. Mem. 5, Brennan No. III is denied as well.

Next, Brennan No. IV bears the title "Evidence of Sansone's Marital Problems Should Be Excluded." That contention is puzzling because, as Sansone R. Mem. 6 states:

> Defendant's motion in this regard is extraordinary because defendant's own opinion witness, Dr. Diana Goldstein, says in her report that Mr. Sansone's marital problems are a key factor in understanding his depression and -- she says -- his failure to properly engage with the Postal Service in an interactive process to work out an accommodation. She describes "exacerbation in Mr. Sansone's pre-existing depressive symptoms -- from the breakup of his second marriage" (Goldstein report p. 31) and writes that "[i]t appears that Mr. Sansone developed an Adjustment Disorder with Mixed Anxiety and Depressed Mood after learning of his wife's extramarital affair in the Spring of 2011. . . ." (Goldstein report p. 34.)

Sansone R. Mem. 6 goes on to elaborate on Dr. Goldstein's report in that respect, then goes on to speak of the competing opinion of Sansone's opinion witness Dr. Ganellen, concluding with a paragraph on the following page that provides added support.

Once again Brennan has come up empty. Brennan No. IV is also denied.

Brennan's next effort, Brennan No. V, is captioned "Certain von Rhein Communications with the Postal Service Should Be Excluded." That and the extended discussion that follows at Brennan Mem. 4 through 7 exemplify -- once again -- an effort to keep from the jury material information that could provide it with a fully informed picture of the setting in which this action ought to be decided.

This Court should not be misunderstood as resolving issues that should be left to the jury for its resolution -- instead it wants to make certain that the jury can resolve the issues in this case armed with a full deck. In that respect Sansone's counsel should have the opportunity to present the matter to the jury in the terms spelled out at Sansone's R. Mem. 7 through 10, while for Brennan's part her counsel should have the opportunity to portray matters in the light that her counsel provides at Brennan Mem. 4 through 6.

This is not, as Brennan would have it, a matter of misleading the jury by creating a false impression. To the contrary, it is a matter of leaving it to the jury to evaluate the parties' competing contentions on the proverbial level playing field. Once more Brennan loses, this time by the denial of Brennan No. V.

Next, Brennan No. VI is headed "There Should Be No Testimony or Argument that Sansone Was 'Forced' To Retire." This Court has already weighed in on that subject by its earlier rejection of Sansone's claim of constructive discharge, so that Sansone's R. Mem. 11 is compelled to try to frame a response by asserting:

> Defendant's sixth motion in limine presents a tricky situation, which requires some finesse to manage.

> After then discussing the need for the parties to present for jury consideration their competing positions as to what factors led Sansone to leave his employment with the Postal Service and as to the consequences of that departure, Sansone's counsel suggests what he labels as a "reasonable order" in these terms:

>> Plaintiff is precluded from testifying and plaintiff's counsel is precluded from arguing that defendant created conditions such that a reasonable person would have been compelled to resign but plaintiff is not barred from testifying and his counsel is not barred from arguing that defendant failed to accommodate his disability and this failure cause Mr. Sansone depression and anxiety so severe that he was unable to work.

That type of approach appears neutral and would allow each party to present his or her arguments on the issue, so that counsel for the parties are ordered to develop a proposed form of such order for discussion at the pretrial conference that will be held a week or so before the March 6 commencement of trial.

In sum, Brennan No. VI as stated in its heading is granted. That said, however, the parties' counsel are ordered to pursue the path just marked out in this opinion.

Next, Brennan No. VII is captioned "Evidence of Sansone's Allegedly 'Lost' Income Should Be Excluded." That is agreed to by Sansone's counsel to the extent that it refers to placing such evidence before the jury. But because Brennan herself goes on to recognize that "back and front pay are equitable remedies to be decided by the court, not the jury" (Brennan Mem. 8), the responsive arguments set out at Sansone's R. Mem. 12 are compelling and are accepted by this Court. So Brennan No. VII as stated in its summary caption is granted in limited part but denied in its global sweep.

Finally, Brennan No. VIII is captioned "The Letters Purportedly Written by Sansone's Primary Care Physician and Containing Admittedly False Statements Should Be Excluded." But excluding in their entirety Sansone's Exs. 44 and 45, which are letters signed by Sansone's primary care physician Dr. Joan McElligott, because of some admittedly erroneous statements made by her medical assistant (not a physician) in having written the letters that Dr. McElligott then signed would represent overkill, for Dr. McElligott expressly repudiated those erroneous statements at her deposition -- and a total absence of the letters from the evidence before the jury would improperly eliminate from jury consideration the heart of the underpinning for Dr. McElligott's medical opinions.

Instead of allowing Brennan's Draconian motion to distort Sansone's orderly presentation of his position by throwing out the figurative baby with the figurative bath water, Sansone R. Mem. 12 to 14 report his counsel's redaction of the offending passages that had been authored by Dr. McElligott's medical assistant and that were properly repudiated by Dr. McElligott in her deposition testimony. With that done, Brennan No. VIII's motion for total exclusion of the two exhibits is denied, and the exhibits will be admitted into evidence as redacted.

## Conclusion

It is distressing for a judge -- certainly this judge -- to consider and evaluate a flock of motions in limine tendered by counsel for the litigants in an important civil case and to find, on the judge's completion of the legal analysis of those motions, that one side or the other has prevailed on the bulk of the areas in dispute to the extent that has been reflected in this opinion. That has led this Court to go through its stated views a second time around to make certain that the philosophical jurisprudential question posed by this Court early on in this opinion -- and answered by leaving the matter to the best judgment of government counsel -- had not played

- 13 -

any part in arriving at the conclusions stated here.  That second review has been completed, and this Court stands by this opinion's analysis as properly called for by the substantive strengths and weaknesses of each side's positions.

In summary, all of Sansone Nos. 1 through 5 are granted, while Sansone No. 6 is granted in part and denied in part (those motions collectively comprise Dkt. No. 82).  On the other side of the coin, comprising Dkt. No. 85:

1. Brennan Nos. I through V and VIII are denied.

2. Brennan No. VI is granted, but with the refinement ordered in this opinion.

3. Brennan No. VII is granted in limited part "but denied in its global sweep."

_____
Milton I. Shadur
Senior United States District Judge

Date:  February 1, 2017